**PIONEER HI–BRED INTERNATIONAL INC., Plaintiff,**

v.

**HOLDEN'S FOUNDATION SEEDS, INC., Hawaiian Research, Ltd., and Corn States Hybrid Service, Inc., Defendants.**

Nos. LM 84–6, 81–60–E.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 15, 1985.

ficient certainty to justify entry of a default judgment for the amount claimed.

Ross H. Sidney, Des Moines, Iowa, Russell H. Hart, Stephen R. Pennell, Lafayette, Ind., John J. Greer, Spencer, Iowa, for plaintiff.

Bruce E. Johnson, Des Moines, Iowa, Richard A. Boehning, Jill A.H. Andersen, Lafayette, Ind., Brian K. Burke, Indianapolis, Ind., for defendants.

ALLEN SHARP, Chief Judge.

## I.

On February 5, 1981, Pioneer Hi-Bred International, Inc. (Pioneer) commenced a civil action against the defendant in United States District Court for the Southern District of Iowa, Central Division, Civil Action No. 81–60–E. Fred Gutwein & Sons, Inc. (Gutwein) is not a party to that action. The Honorable Donald O'Brien, a Judge of that Court, has been responsible for that case.

The gravamen of Pioneer's complaint, is that the defendants have misappropriated Pioneer's inbred material designated "H3H", which had been used by Pioneer in its hybrids designated "3780" and "3541". Pioneer alleges that the defendants have converted "H3H" and have incorporated it into Holden's inbred seed stocks designed "LH 38" and "LH 39". Along with other relief, Pioneer seeks an injunction directing the defendants to take all "necessary means to recover or reacquire, from whatever sources they may have supplied all 'LH 38', 'LH 39', and any lines derived therefrom in the hands of those parties, and to retain or dispose of all such material pursuant to Order of this Court."

This proceeding was commenced by the plaintiff Pioneer for a Deposition Subpoena under Rule 45 F.R.C.P. and has filed a Motion to Compel under Rule 37 F.R.C.P. as against a non-party, Fred Gutwein & Sons, Inc., located in this division of this court. Gutwein has Motion for Expenses and Attorney Fees pending. Proceedings relating to all pending motions were held in Lafayette, Indiana on January 25, 1985 with all interested parties including Gutwein represented by counsel.

Whatever their origin, LH 38 and LH 39 are now common inbreds in the seed corn industry. Most seed corn companies now offer seed corn hybrids that contain LH 38 and that LH 39 also is widely used by seed corn producers. In the paper entitled "Resistance to Motion for Protective Order," filed by Pioneer on November 30, 1984, Pioneer acknowledges that Holden's advises its customers that hybrids involving LH 38 are available from perhaps 100 to 200 companies in addition to Gutwein.

Gutwein has been and is a customer of all three of the defendants and Pioneer has known that for a long time. As early as June 24, 1982, Pioneer knew or could have known that Gutwein purchased a quantity of early production of LH 38 from Holden's. Pioneer then had Exhibit 202, Holden's inventory card for Lot No. 785 of LH 39. Gutwein's name appears prominently on that inventory card. Pioneer's examination of Don Eggerling, an employee of Holden's, during a deposition on June, 1982, clearly establishes that Pioneer knew that Gutwein's name appeared on the inventory card.

On Friday, October 19, 1984, without prior notice to Gutwein, Pioneer served Gutwein with a Notice of Oral Deposition and a Deposition Subpoena, scheduling the deposition of Gutwein's designee on Thursday, October 25, 1984. The Notice of Oral Deposition was served pursuant to Fed.R. Civ.P. 30(b)(6). It notices Gutwein's deposition as a corporation and instructs Gutwein to designate

"one or more officers, directors, managing agents or other persons to testify on its behalf concerning the following matters:

The location and content of all of Fred Gutwein & Sons, Inc.'s, [sic] books and records from 1975 to the present relating to all contracts, correspondence and other documents evidencing or concerning any business transactions of any nature between Fred Gutwein & Sons, Inc. and any of the defendants."

The Deposition Subpoena commands Gutwein to produce at 9:00 o'clock A.M., October 25, 1984, the following documents or objects:

All books and records from 1975 to the present relating to all contracts, correspondence and other documents evidencing or concerning any business transactions of any nature between your company and any of the following: Holden Foundation Seeds, Inc., Hawaiian Research, Ltd., or Corn States Hybrid Service, Inc.

On October 23, 1984, Gutwein moved the court for an order staying the deposition for 30 days because, among other reasons, the documents sought would disclose trade secret and confidential information about Gutwein's business. This court entered the stay as requested on October 23, 1984.

On November 23, 1984, Gutwein filed its Motion for Protective Order, together with its supporting Brief and the Affidavit of Fredrick C. Gutwein. In its Motion for Protective Order, Gutwein sought an order from the court that discovery not be had as to the Notice of Oral Deposition and that the court enter an order quashing the Deposition Subpoena because (a) Pioneer was seeking highly sensitive information and materials from Gutwein and (b) Pioneer had not shown the need for and relevance of the information and material sought. Gutwein later complied with Pioneer's Notice of Oral Deposition and Deposition Subpoena, as modified by a Letter Agreement, Gutwein has withdrawn its Motion for Protective Order. Gutwein still opposes the additional discovery.

On November 30, 1984, Pioneer filed a paper entitled "Resistance to Motion for Protective Order." In that paper, Pioneer made the following representation to the court about the reason it needed to take Gutwein's deposition:

During discovery depositions of Holden's personnel in October-November, 1984, Pioneer learned that Gutwein was closely involved in Holden's early testing programs relating to LH38 and LH39. It was also revealed that Gutwein was permitted to purchase a substantial quantity of LH38 at a time when that parent stock was first made available by Holden's, and was in very short supply. These two factors, standing alone, establish that Gutwein has knowledge and information relating to the defendants and the seed in question which may be vital to Pioneer's discovery effort in this case.

In its Resistance, Pioneer made other representations to the court with respect to the scope of the discovery it sought from Gutwein. At pages 3 and 4 of its Resistance, Pioneer describes to the court the documents it wanted from Gutwein:

[T]he subpoena duces tecum served on Gutwein does not request breeding records, nursery programs or similar information from which a competitor such as Pioneer could glean the breeding techniques, specific crosses or similar detailed information necessary to gain any competitive advantage to Pioneer. Rather, the requested documents relate only to the purchases made by Gutwein and related correspondence. This information, while entitled to protection from disclosure and any unauthorized use, is not, in and of itself, likely to reveal any of Gutwein's legitimate trade secrets, as it does not indicate how Gutwein uses the product it buys from Holden [sic].

\* \* \* \* \* \*

No request was made for any information about Gutwein's customers or its growing plans.

On December 15, 1984, Ross H. Sidney and John J. Greer, two of the attorneys for

Pioneer in this action, telephoned Brian K. Burke, one of the attorneys for Gutwein in this matter. Messrs. Sidney and Greer proposed to Mr. Burke that the parties attempt to resolve Gutwein's Motion for Protective Order before the hearing on the Motion then scheduled for December 24, 1984. Mr. Burke and Messrs. Sidney and Greer reached a tentative understanding with respect to the scheduling of Gutwein's deposition and the production of documents, which was reconfirmed orally on Monday, December 17, 1984. The tentative agreement thereafter was memorialized in the Letter Agreement of December 17, 1984, which provides in pertinent part as follows:

1. Gutwein will agree to schedule the deposition of its designee, probably Fredrick Gutwein. During our telephone conversation of this morning [December 17, 1984], we tentatively agreed to schedule the deposition for Friday, January 4, 1985, in Lafayette, Indiana.

2. Gutwein will agree to produce in response to Pioneer's subpoena duces tecum documents Gutwein regards to be pertinent, subject to an agreed Protective Order, a proposed version of which is enclosed. Gutwein will identify generically the documents it objects to producing in response to the subpoena duces tecum. The generic description will be provided at the time Gutwein produces documents at the deposition.

3. Gutwein will preserve its objections as to the documents it does not produce at the deposition and its objections to any and all deposition inquiries of Gutwein's designees.

4. Gutwein will ask the Court to defer ruling on its Motion for Protective Order pending the parties' efforts to resolve the matter of the discovery requests and Gutwein's responses thereto.

5. Pioneer will agree that the procedure outlined in points 1 through 4 above constitutes compliance with its subpoena, subject to Pioneer's right to seek an order from the Court that Gutwein produce documents Gutwein has declined to produce or that Gutwein answer questions asked during the deposition that Gutwein has refused to answer. Gutwein shall have the right to oppose all such requests for discovery orders.

On January 4, 1985, Gutwein appeared by its designee, Vice President Fredrick C. Gutwein, for its deposition upon oral examination at the offices of Bennett, Boehning, Poynter & Clary, Lafayette, Indiana, and produced documents in response to Pioneer's Deposition Subpoena. At the outset of the deposition and pursuant to the Letter Agreement, Gutwein produced 27 pages of documents dated on or before February 5, 1981 (the date on which this action was commenced). On January 22, 1985, Gutwein produced 52 additional pages of documents, and Gutwein produced one additional document on January 23, 1985.

The documents Gutwein produced relate to transactions between Gutwein and any of the defendants involving either (a) inbred parent seed corn stock designated LH 38 or LH 39 or (b) hybrid seed corn stock one parent of which was LH 38 or LH 39. As required under the Letter Agreement, counsel for Gutwein described by generic category the documents that Gutwein declined to produce to Pioneer:

1. Documents regarding transactions involving inbreds other than LH 38 or LH 39 and documents regarding transactions involving hybrids that did not contain either LH 38 or LH 39. Such documents would include purchase orders, invoices and related correspondence.

2. Telephone bills that would disclose toll charges for long-distance telephone communications between Gutwein and any of the defendants.

3. All documents bearing a date after February 5, 1981. Among such documents there are documents that relate to transactions involving LH 38 or LH 39.

Gutwein advised Pioneer at the outset of the deposition that Gutwein's deposition testimony would be subject to the same limitations that Gutwein had imposed with respect to its production of documents.

On January 4, 1985, Gutwein, Pioneer and the defendants agreed to entry of a Protective Order to govern the dissemination and use of information Gutwein discloses to Pioneer and the defendants in the course of discovery. The court signed the Stipulation and Protective Order on January 18, 1985. All of the documents produced and all of Mr. Gutwein's deposition testimony have been designated "Confidential" under the Stipulation and Protective Order.

Pioneer examined Mr. Gutwein on January 4, 22 and 24, 1985 in a broad-based and far-reaching manner.

Pioneer sought information about such diverse matters, among others as (a) Mr. Gutwein's acquaintance with persons identified as Pioneer growers in northern Indiana, (b) Gutwein's business dealings with another seed corn producer that is not a party to this action, (c) Gutwein's "outside sources" that it used for germination testing, (d) Gutwein's use of independent consultants in connection with its production of seed corn, (e) Gutwein's development of inbred proprietary seed corn lines, (f) Gutwein's "field days" for its customers, (g) Gutwein's sales of hybrid seed corn in the so-called "brokerage" market, (h) how Gutwein intended to use and used the material involving LH 38 and LH 39 that Gutwein purchased from the defendants, (i) Gutwein's designations for its hybrids including but not limited to those that include LH 38 or LH 39, and (j) the level or extent of Gutwein's production of hybrid seed corn, including, but not limited to, its production of hybrid seed corn involving LH 38 and LH 39.

Gutwein objected to some of Pioneer's inquiries because (a) Pioneer had not shown any need or relevance for sensitive information about matters (i) that do not pertain to Gutwein's transactions with the defendants or (ii) that occurred after this action was commenced, and (b) the inquiries went far beyond the scope of Pioneer's Notice of Oral Deposition. Nevertheless, except for questions that sought information about matters and events after the commencement of this action, Gutwein did not instructs its designee not to answer Pioneer's questions until Gutwein had attempted to elicit from Pioneer an explanation of (a) the need for relevance of information sought or (b) the relationship of the inquiry to the matter upon which deposition testimony had been sought in the Notice of Oral Deposition.

On January 22, 1985, Pioneer served Gutwein with another Deposition Subpoena. The subpoena was not accompanied by any witness fee.

On January 24, 1985, Pioneer filed its Motion to Compel, seeking an order pursuant to Fed.R.Civ.P. 37 that Gutwein produce additional documents and provide additional deposition testimony. Pioneer now insists that Gutwein provide the following additional information and/or disclose portions of redacted documents already produced:

1. Complete pedigrees of all hybrid material Gutwein obtained from Holden's that included LH 38 or LH 39.

2. Documents disclosing the breeding records nursery programs, planting programs and results and growing plans of Butwein's breeder, Roger Levy.

3. The results of Gutwein's testing of hybrid seed corns including, but apparently not limited to, its testing of hybrid seed corns that involve LH 38 or LH 39.

4. Documents relating to transactions between Gutwein and the defendants that occurred after the commencement of this action.

5. Documents disclosing the extent of Gutwein's sales of hybrids involving LH 38 or LH 39 either in quantity or dollar volume and whether such hybrids were brokered or wholesaled to other seed companies.

## II.

Gutwein has afforded Pioneer a reasonable opportunity and latitude to inquire into Gutwein's transactions with the defendants. Pioneer declined to or was unable to provide explanations to justify its inquiries into sensitive matters relating to events that occurred after February 5, 1981, and into matters unrelated to Gutwein's transactions with the defendants, whether before or after February 5, 1981.

Gutwein has produced documents dated on or before February 5, 1981, that relate to transactions between Gutwein and the defendants, including documents disclosing its purchases from the defendants of seed corn designated LH 38 or LH 39 or containing either of these two inbred parent seed stocks. To determine the kind of documents to produce, Gutwein relied in part upon Pioneer's representations to the court in its "Resistance" that Pioneer was interested in early testing and early purchases of LH 38 and LH 39 and that the documents sought relate "only" to purchases and related correspondence.

There are reasonable reasons for establishing February 5, 1981, as the cutoff date for Gutwein's production of documents and deposition testimony. First, Pioneer's claims against the defendants hinge on the theory that Holden's LH 38 and LH 39 incorporate Pioneer's proprietary inbred material H3H. Hybrids that contain LH 38 and LH 39 have been available from Holden's since spring 1979. Gutwein's early purchases of LH 38 and LH 39 and hybrids that contain the two inbreds are the only transactions that even remotely could be pertinent to Pioneer's theory. Events that have occurred since Pioneer filed its lawsuit may not have changed the facts about the true source or sources of LH 38 and LH 39.

Pioneer represented in its Resistance that it needed to conduct discovery of Gutwein because of (a) what Pioneer alleged were Gutwein's early purchases of LH 38 and LH 39, and (b) Gutwein's alleged involvement in Holden's early testing of LH 38 and LH 39. Pioneer has not even obtained discovery of the defendants with respect to many sensitive matters beyond 1980. A copy of the district court's order of July 26, 1982, establishing 1980 as the discovery cutoff with respect to the defendants' sales of LH 38 and LH 39 is noted. The district court obviously did not regard information about Holden's sales of LH 38 and LH 39 after January 1, 1981, to be necessary and relevant.

Pioneer has abandoned the positions it took in its Resistance, and it seeks to discover a broad range of sensitive documents and information. Gutwein explained to the court in its Motion for Protective Order and supporting Brief that the Deposition Subpoena sought documents that would disclose the genetic composition of Gutwein's hybrid seeds, the identities and sources of Gutwein's parent seed stock, the terms, including the quantities and prices, of Gutwein's purchases and sales of hybrid seed corn and parent seed corn, the identities of persons and organizations that had purchased seed corn from Gutwein and Gutwein's testing and development of, and growing plans with respect to, hybrid corn and parent seed corn.

Disclosure of the information Pioneer seeks could seriously jeopardize Gutwein's position in the hybrid seed corn industry. Gutwein is particularly concerned about the possibility that its competitors will learn of its present supplier and customer relationships, which could be jeopardized if they were disclosed.

Protection of confidential business information is explicitly provided for in Fed.R. Civ.P. 26(c). That the rule is designed to protect confidential information of the kind at issue here is evidenced by the Advisory Committee notes following the rule. It is there noted that the reference to trade secrets and other confidential information is merely a reflection of existing law, citing *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965).

It is well established that "Courts will usually resist ordering disclosure of

trade secrets absent a clear showing of an immediate need." 4 *Moore's Federal Practice* ¶ 26.60(4) at p. 26–212. As the court in *Paul v. Sinnott,* 217 F.Supp. 84, 85 (W.D. Pa.1963), explained:

Courts ... will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors.

*Accord A.H. Robins Co. v. Fadely,* 299 F.2d 557, 561 (5th Cir.1962). Federal courts have imposed special requirements when the documents sought would disclose trade secrets or confidential business information. The party seeking production of the documents must establish that they are relevant and that he has a specific need for them to prepare for trial. 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2043 at p. 301 (1970).

 The moving party must make a "clear showing that the documents are relevant to the issues involved" in the litigation. *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1186 (D.S.C.1974). It also must demonstrate that inspection of the documents to be produced is in some specific way necessary for its adequate trial preparation. *See Scuderi v. Boston Ins.,* 34 F.R.D. 463, 467 (D.Del.1964). The moving party's burden to show that the trade secret documents it seeks are relevant and necessary to the proper presentation of its case is mandatory. *Hartley Pen Co. v. U.S. District Court for the Southern District of California, Central Division,* 287 F.2d 324, 328–31 (9th Cir.1961).

Although Pioneer's twelve page Motion to Compel cites no authority of any kind for the relief it seeks, Pioneer concedes that it must show that "there is a clear and immediate need for the disclosure of this information from the deponent in order to prepare for trial." Pioneer has not met that standard.

 In the matter now before the court, Pioneer has not made any factual showing of an "immediate need" for the documents and deposition testimony it seeks. That Pioneer had delayed its discovery of Gutwein for so long after June 1982, when

Pioneer should have learned or did learn that Gutwein got part of Holden's early production of LH 38, hardly supports its claim now that it is imperative to find out about Gutwein's business. Moreover, although Pioneer seeks an injunction requiring the defendants to recover the LH 38 and LH 39 they have sold, Pioneer waited almost four years after the commencement of its lawsuit to begin the process of determining from customers of the defendants, such as Gutwein, the quantities of LH 38 and LH 39 that have been acquired from the defendants. These delays show that there is little, if any, need even for the information Pioneer has obtained from Gutwein and that there is no need for the additional information it seeks. Pioneer's conclusory assertions that the documents are necessary to prosecute its claims against the defendants are not sufficient. *Bentz v. Cities Serv. Tankers,* 41 F.R.D. 294 (S.D.N.Y.1966); *Lichter v. Mellon-Stuart Co.,* 24 F.R.D. 397 (W.D.Pa.1959).

Pioneer has not shown that the documents and deposition testimony it seeks from Gutwein are relevant to its claims against the defendants. In this case, Pioneer contends that Holden's obtained some of Pioneer's inbred material designated H3H and that it is now reflected in Holden's LH 38 and LH 39. Gutwein already has produced documents describing the extent of its initial purchases of LH 38 and LH 39 from Holden's commencing in 1979. Thus, Gutwein has already supplied to Pioneer the only information that could be connected to Pioneer's claims against the defendants.

Pioneer's general, conclusory assertions that the documents and information it seeks from Gutwein are relevant to this case are not sufficient in the face of Gutwein's challenges to those assertions. *Hartley Pen Co. v. U.S. District Court for the Southern District of California, Central Division,* 287 F.2d 324 (9th Cir.1961); *Home Ins. Co. v. Ballenger,* 74 F.R.D. 93 (N.D.Georgia 1977); *Struthers Scientific & Int'l Corp. v. General Foods Corp.,* 45 F.R.D. 375 (S.D.Tex.1968). Pioneer must

meet a higher standard. Pioneer must establish that the additional information it wants is sufficiently relevant and necessary to outweigh the harm disclosure of the information would cause Gutwein. C. Wright & A. Miller, *Federal Practice and Procedure*, § 2043 at p. 301 (1970). Pioneer has not carried this burden.

Pioneer asked Gutwein to designate an officer, director, managing agent or other person to testify as to the location and content of Gutwein's books and records relating to transactions with the defendants. Gutwein designated its Vice President and General Manager, Fredrick C. Gutwein, to testify for the corporation on that matter, and he did so at length on January 4, 22, and 23, 1985.

Pioneer served its Notice and Deposition Subpoena pursuant to Fed.R.Civ.P. 30(b)(6) which provides as follows:

> A party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Under this rule, Gutwein was not obliged to submit to oral examination on any matters besides those upon which examination had been requested. Nevertheless, Gutwein permitted Pioneer to examine Mr. Gutwein at length about matters well beyond the narrow scope of the Notice. But the deposition has proceeded as far as it needs to. Pioneer has had the opportunity to ask any pertinent questions about the matter for which it requested a designee.

The record in this case does not mandate an order for further discovery in this case and none is here ordered. The Gutwein petition for fees and expenses is reserved on and further supplementation of same is invited by March 4, 1985.

The Clerk shall provide counsel and all interested parties with a copy of this order and shall forward a copy of same to Judge O'Brien.

It is therefore ORDERED that the parties and nonparty Gutwein shall appear before this court at 1:30 o'clock P.M. on March 14, 1985, at the Charles A. Halleck Federal Building, Lafayette, Indiana, for a hearing to determine what expenses, including attorney fees, nonparty Gutwein may recover from the plaintiff pursuant to Fed.R.Civ.P. 37(a)(4).

SO ORDERED.