EAGLE INDUSTRIES, INC., et al., Plaintiffs,

v.

RANSBURG CORPORATION, et al., Defendants.

No. IP 89–106–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 10, 1989.

Garrett B. Johnson (pro hac vice), Carol M. Rice (pro hac vice), and Philip S. Beck (pro hac vice), Kirkland & Ellis, Chicago, Ill., Phillip A. Terry and Brian W. Welch, McHale, Cook & Welch, Indianapolis, Ind., for plaintiffs.

Katherine B. Jenks (pro hac vice), Jones, Day, Reavis & Pogue, Cleveland, Ohio, John W. Zeiger (pro hac vice), and J. Kevin Cogan, Jones, Day, Reavis & Pogue, Columbus, Ohio, Michael A. Klein and Donald E. Knebel, Barnes & Thornburg, Indianapolis, Ind., for defendant Ransburg.

KENNARD P. FOSTER, United States Magistrate.

This matter comes before the Court on the plaintiffs' Complaint, the plaintiffs' Motion for Preliminary Injunction, the plaintiffs' First and Second Requests for Production of Documents, plaintiffs' Motion for Expedited Discovery and Memorandum in Support thereof, the Court's Pretrial Entry for February 2, 1989, defendant Ransburg's Motion for Protective Order barring merits relief in the guise of discovery, defendant Ransburg's Memorandum of Law in Support of its Motion for Protective Order, the defendants' Appendix of authorities to its Memorandum in Support of its Motion for Protective Order, the Affidavits of Jeffrey Salzman, Katherine B. Jenks, and Bernard C. Faulkner, the plaintiffs' Memorandum in Opposition to Motion for Protective Order, the defendants' Reply Memorandum in Support of Motion for Protective Order (which was filed under seal, together with supporting papers including the Affidavit of James B. Davis and the second Affidavit of Katherine B. Jenks), the defendants' Appendix of authorities to its Reply Memorandum in Support of its Motion for Protective Order, and the Court's confidentiality and protective order of February 8, 1989. The Court carefully considered the foregoing pleadings, reviewed the pertinent case law, and orally ruled on February 10, 1989 that defendant

Ransburg's Motion for Protective Order Barring Merits Relief in the Guise of Discovery should be granted. On the same day, a short time after the Court's ruling was made known to the parties, the plaintiff's counsel filed a Notice of Dismissal.

# I.

## DISCUSSION AND DECISION

Reduced to its essence, the instant discovery dispute requires the Court to resolve an issue which typically arises even in those cases where the financial stakes are not as high as in the present case. The issue, simply stated, is whether certain confidential material and information sought by the plaintiffs through its First Request for Production of Documents is both relevant and necessary to proof of the plaintiffs' claims, and whether the plaintiffs' need for the confidential material and information outweighs the risk of harm to defendant Ransburg which would be occasioned by its disclosure. *See, Pioneer Hi–Bred International, Inc. v. Holden's Foundation Seeds, Inc.,* 105 F.R.D. 76, 82 (N.D.Ind.1985). The Court concludes that the plaintiffs are not entitled to the material and information requested in their First Request for Production of Documents, nor to that material and information requested by their Second Request for Production of Documents which falls within the purview of their First Request, because the material and information (1) is neither relevant nor necessary to proof of the plaintiffs' claims, and (2) the equities in the present discovery dispute quite clearly tip in defendant Ransburg's favor.

Ultimately, in ruling on the plaintiff's motion for preliminary injunction the Court will be called upon to evaluate the fairness of the auction process. *In Re Holly Farms Corporation Shareholders Litigation,* Civil Action No. 10350, Slip Op. (Del. Ch., filed December 30, 1988) [1988 WL 143010], *citing, Revlon, Inc. v. MacAndrews & Forbes Holdings,* 506 A.2d 173 (Del.1986). The question upon which the Court's evaluation of the auction process will turn is whether Ransburg breached its fiduciary duty to its shareholders by not disclosing confidential information to the plaintiffs, despite the plaintiffs' refusal to execute a confidentiality and standstill agreement, after they (the plaintiffs) made known the fact that they might submit a higher bid depending upon their review of the confidential information. The actual content of the confidential information, however, simply has no bearing upon whether the information should have been disclosed.

It behooves the Court to note at this point that defendant Ransburg offered to disclose its confidential information to all of its suitors if they first signed the same confidentiality and standstill agreement. Of the nearly fifty entities who either asked or were invited to consider purchasing some or all of Ransburg, twenty-six entities who expressed interest in purchasing all of Ransburg (including Illinois Tool Works, Inc.) and twenty-one entities who expressed interest in purchasing a portion of Ransburg, agreed to sign a confidentiality and standstill agreement and were thereafter provided access to Ransburg's confidential information. Affidavit of Jeffrey Salzman, p. 2, ¶ 4. Those entities who did not sign confidentiality and standstill agreements did not gain access to Ransburg's confidential information. These facts will of course have a significant bearing on the Court's evaluation of the fairness of the auction process. *See, In Re J.P. Stevens & Co., Inc. Shareholders Litigation,* 542 A.2d 770, 784 (Del.Ch.1988) (Court emphasized in reaching its conclusion that there was no evidence of preferred treatment, that "non-public" documents had been offered to all prospective suitors on the same terms).

The Court concludes that the actual content of the confidential information has no bearing on whether defendant Ransburg breached its fiduciary duty to its shareholders by not disclosing the confidential information. The Court's evaluation of the auction process does not depend upon whether the plaintiffs would have submitted a higher bid if Ransburg's confidential information had been disclosed to them. The question of whether the confidential informa-

tion would have positively or negatively affected the plaintiffs' assessment of Ransburg's worth, which obviously has a good deal to do with whether the plaintiffs would have submitted a higher bid, has no probative value whatsoever with respect to the fairness of the auction process to Ransburg's potential suitors and to its current shareholders.

Despite the plaintiffs' insistence that they "are entitled to develop evidence necessary to show that if Eagle, LFC and other truly interested bidders had been given the same information that Ransburg gave ITW, one or more of them would have submitted a better bid than ITW's" (Plaintiffs' Memorandum in Opposition to Motion for Protective Order, p. 4), the Court is quite able to evaluate the fairness of the auction process (including the requirement that potential buyers execute a confidentiality and standstill agreement prior to disclosure of Ransburg's confidential information) by examining the process itself rather than what the plaintiffs would have had disclosed to them if they had attempted to purchase Ransburg through, rather than outside of, Ransburg's auction process.

The Court is compelled to reject the plaintiffs' assertion that the confidential information is "reasonably calculated to lead to the discovery of admissible evidence" for the same reason. *See*, Fed.R. Civ.Pro. 26(c). While the Court is well aware that relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence", *see*, Fed.R.Evid. 401, there simply is no fact of consequence to this litigation which would be made more probable if Ransburg's confidential information were disclosed to the plaintiffs than if it were not.

Finally, the risk of harm to Ransburg's shareholders from disclosure far outweighs the confidential information's relevance and the plaintiffs' need for it. The Court reaches this determination based upon (1) its conclusion that the contents of the confidential information are neither relevant nor

necessary to proof of the plaintiffs' claims, which obviously weighs heavily on Ransburg's side of the scales, and (2) the fact that the information sought by the plaintiffs allegedly includes proprietary information as well as information constituting trade secrets under Indiana law. *See*, I.C. § 24-2-3-2; Affidavit of Bernard C. Faulkner, pp. 5-9. Requiring Ransburg to produce such information during this stage of the litigation presents not only those risks typically associated with disclosure of a company's business secrets to one of its competitors, *see, American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (7th Cir. 1987), but also may very well jeopardize its current agreement with ITW. While the plaintiffs attempt to downplay this possibility on the grounds that (1) Eagle and LFC were unfairly excluded from the auction process and (2) Ransburg should not be concerned with who purchases the corporation as long as their shareholders obtain the maximum price for their shares, the Court rejects the plaintiffs' argument.

In the event that the ITW/Ransburg agreement were disturbed as a result of a ruling providing the plaintiffs with Ransburg's confidential information, Ransburg's shareholders could very well be left in the position dramatically inferior to their current position. If the confidential information were provided to the plaintiffs during discovery and the ITW/Ransburg agreement was disturbed, but the plaintiffs did *not* prevail in this action, Ransburg would lose its highest bidder and the plaintiffs would have had an opportunity no other potential bidder had, a chance to see the show without first purchasing a ticket. If, on the other hand, the confidential information was provided to the plaintiffs during discovery, the agreement was disturbed, and the plaintiffs prevailed in this action but chose not to bid for Ransburg, Ransburg's shareholders would lose their highest bidder and the plaintiffs would have had access, in effect unrestricted (because they would not have executed a confidentiality and standstill agreement), to Ransburg's business secrets. Either scenario would drive off Ransburg's highest bidder and leave Ransburg in an unprotect-

ed posture *vis-a-vis* its future dealings with the plaintiffs.

### CONCLUSION

For the foregoing reasons, the defendants' Motion for Protective Order Barring Merit Relief in the Guise of Discovery is GRANTED. The plaintiffs' First Request for Production of Documents, and their Second Request for Production of Documents (to the extent that it seeks material which falls within the purview of the plaintiffs' First Request), are accordingly DENIED.

IT IS SO ORDERED.