STATE of Missouri ex rel. BLUE
CROSS AND BLUE SHIELD
OF MISSOURI, Relator,

v.

The Honorable David P. ANDERSON,
Judge of the Circuit Court of Greene
County, Missouri, Respondent.

No. 19482.

Missouri Court of Appeals,
Southern District,
Division Two.

April 12, 1995.

Martin J. Toft of Stinson, Mag & Fizzell, P.C., St. Louis and Daniel D. Crabtree, of Allison & Murdock/Stinson, Mag & Fizzell, P.C., Kansas City, for relator.

Frank M. Evants and Cynthia B. McGinnis of Miller & Sanford, P.C., Springfield, for respondent.

PREWITT, Judge.

There are two consolidated underlying actions. *St. John's Medical Center vs. Blue Cross Hospital Services, Inc. of Missouri,* was filed October 4, 1974, seeking monetary damages and an injunction. The action consolidated with it was filed against Relator September 17, 1976, by West Plains Memorial Hospital, Cardwell Memorial Hospital, Inc., Dexter Memorial Hospital, Dunklin County Memorial Hospital, St. Francis Hospital and Southeast Hospital seeking relief similar to that in the initial action. The delay in concluding these matters is not explained in the record before us.

Relator is a not-for-profit health care services corporation operating pursuant to Chapter 354 RSMo 1994. It enters into contracts to furnish specified health care benefits to persons it refers to as "members". Those contracts have a provision purporting to prohibit members from assigning the benefits to health care providers. Relator also contracts with certain health care providers for them to provide services to those members. Apparently the contracts with the health care providers cover various health care services with a specified amount payable to the provider directly from Relator.

St. John's Medical Center does not have a contract with Relator. When it furnishes services to a person who has a contract with Relator, it does not receive payment from Relator. It has received assignments from Relator's members, but Relator has refused to honor the assignments. St. John's instituted the first underlying lawsuit seeking damages when Relator failed to pay pursuant to various assignments and for an injunction requiring Relator to pay assigned benefits directly to it in the future. On October 18, 1974, a temporary injunction was issued requiring Relator to include St. John's name on checks issued to its members for benefits provided by St. John's. St. John's and the other plaintiffs in the underlying actions have

dismissed their counts seeking monetary damages.

On February 28, 1994, St. John's served a subpoena duces tecum upon an officer of Relator seeking to have produced at a deposition certain documents, including those that created this action. After various filings, hearings, and motions, the trial court entered a protective order which limited disclosure of certain documents to counsel and certain specified officials of Plaintiffs. Before producing the documents, Relator filed a Motion for Reconsideration. On April 5, 1994, Respondent denied that Motion and ordered production, but deferred the effect of the order for ten days to allow Relator to file a Petition for Writ of Prohibition. Following that filing, this Court granted a preliminary order on April 25, 1994.

Here, Relator seeks to prevent the trial court from allowing St. John's Medical Center access to three documents: (1) the current pricing arrangements between Relator and hospitals in a thirteen-county area in Southwest Missouri; (2) studies of the relative costs of health care at hospitals in that area; and (3) a provision of a 1994 contract between Relator and Lester E. Cox Medical Center.

Relator contends, and apparently there is little, if any dispute, that officials at St. John's who might have access to the disclosed documents have formed a corporation to establish a competitive network of health care providers in Southwest Missouri which would compete with Relator. Relator argues that the requested documents contain confidential and proprietary business information, the disclosure of which would cause irreparable harm to it. Cox Medical Center has also protested the disclosure of this information.

■ Prohibition can lie where irreparable harm may come to a litigant due to discovery, and appeal is not adequate to rectify the harm. *See State ex rel. Douglas Toyota III v. Keeter*, 804 S.W.2d 750, 752 (Mo. banc 1991); *State ex rel. Faith Hospital v. Enright*, 706 S.W.2d 852, 855 (Mo. banc 1986); *State ex rel. Noranda Aluminum, Inc. v. Rains*, 706 S.W.2d 861, 862–863 (Mo. banc 1986); *State ex rel. Less v. O'Brien*, 814 S.W.2d 2, 4 (Mo.App.1991); *see also* Note,

*The Writ of Prohibition in Missouri*, Wash. U.L.Q. 511, 522 and 524 (1972) (prohibition often issued in discovery matters when appeal an inadequate remedy).

In *State ex rel. Anheuser v. Nolan*, 692 S.W.2d 325, 328 (Mo.App.1985), the Eastern District of this Court stated:

Determination of the appropriate boundaries of discovery requests involves "the pragmatic task of weighing the conflicting interests of the interrogator and the respondent." [*State ex rel. Hoffman v. Campbell*, 428 S.W.2d 904, 906 (Mo.App. 1968).] Therefore, in ruling upon objections to discovery requests, trial judges must consider not only questions of privilege, work product, relevance and tendency to lead to the discovery of admissible evidence, but they should also balance the need of the interrogator to obtain the information against the respondent's burden in furnishing it. Included in this burden may well be the extent of an invasion of privacy, particularly the privacy of a nonparty. *See State ex rel. Boswell v. Curtis*, 334 S.W.2d [757,] 763 [ (Mo.App.1960) ]. Thus, even though the information sought is properly discoverable, upon objection the trial court should consider whether the information can be adequately furnished in a manner less intrusive, less burdensome, or less expensive than that designated by the requesting party. *See State ex rel. Albert v. Adams*, 540 S.W.2d 26, 30–31 (Mo. banc 1976).

■ Each matter dealing with protective orders in discovery matters must be considered on its own facts and circumstances. *State ex rel. Charterbank Springfield, N.A. v. Donegan*, 658 S.W.2d 919, 923 (Mo.App.1983). "Prohibition has been the vehicle for granting relief from an excessively broad protective order." *Id.* at 924.

Rule 56.01(c)(7) provides in part that:

For good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) that a trade secret or other confidential research, development, or commercial information

not be disclosed or be disclosed only in a designated way.

■ As this Rule is identical to Rule 26(c), Fed.R.Civ.P., and apparently came from it, federal law, in interpreting its rule, is strong, persuasive authority as to the meaning of the Missouri rule. *Butler v. Hurlbut*, 826 S.W.2d 90, 94 (Mo.App.1992).

■ In applying the federal rule the courts have generally adopted the following criteria for determining whether information is a trade secret:

(1) the extent to which the information is known outside of the business; (2) the extent to which the information is known to those involved in the business; (3) the extent of the measures taken to guard the secrecy of the information; [and] (4) the value of the information to the business and its competitors.

*Cuno Inc. v. Pall Corp.*, 117 F.R.D. 506, 508 (E.D.N.Y.1987). *See also Deford v. Schmid Products Co.*, 120 F.R.D. 648, 653 (D.Md. 1987); *Reliance Ins. Co. v. Barron's*, 428 F.Supp. 200, 203 (S.D.N.Y.1977).

■ Relator contends, and we believe the record establishes, that the documents sought contain discounted pricing information agreed to through private negotiations between Relator and various hospitals for providing services to Relator's members. The information is not available publicly and the hospitals have indicated to Relator that they do not want those agreements disclosed. The pricing information is available to Relator's employees on a "need-to-know" basis.

The study of relative health care costs is an analysis of the confidential pricing information compiled by employees of Relator. Within Relator, access to the market analysis is limited to three or four key management officials. The regional vice president and chief operating officer of the Southwest region, headquartered in Springfield, states that his copy of the study is kept in a locked file. Relator believes this information could provide St. John's with the nature of the concessions and discounted prices that they could offer to entice health care providers to leave Relator and join its affiliated network of health care providers.

■ We conclude that Relator has demonstrated that the information is confidential and that a specific potential harm could result from the disclosure of that information. Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *R & D Business Systems v. Xerox Corp.*, 152 F.R.D. 195, 197 (D.Col.1993) (citing *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.*, 107 F.R.D. 288 (D.Del.1985)). Thus, the burden shifts to St. John's to establish that the discovery is relevant and necessary to the action. *Cutler v. Lewiston Daily Sun*, 105 F.R.D. 137, 140 (D.Maine 1985).

■ The party seeking production of documents which contain trade secrets or confidential information must establish that the documents are relevant and that it has a specific need for the documents in order to prepare for trial. *Pioneer Hi–Bred International Inc. v. Holden's Foundation Seeds, Inc.*, 105 F.R.D. 76, 82 (N.D.Ind.1985) (applying Fed.R.Civ.P. 26(c)) (citing *Hartley Pen Co. v. U.S. District Court for the Southern District of California, Central Division*, 287 F.2d 324, 328–31 (9th Cir.1961) (moving party's burden to show trade secret documents are relevant and necessary to proper presentation of its case is mandatory)); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1186 (D.S.C.1974) (requiring a "clear showing that the documents are relevant to the issues involved"); *Scuderi v. Boston Ins.*, 34 F.R.D. 463, 467 (D.Del.1964) (inspection of the documents must be in some specific way necessary for adequate trial preparation).

■ St. John's asserts that the documents are relevant because they will support its response to a defense of Relator. Relator contends that the non-assignment clause helps to contain health care costs in Southwest Missouri. Rule 56.01(b)(1) states in part that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

St. John's contends that the contract with Cox Medical Center is relevant because if Relator and Cox are parties to an exclusive contract, then Relator could not contract

with St. John's or other local hospitals in an effort to contain health care costs. However, the testimony of the regional vice president at a deposition acknowledged that Relator had an exclusive agreement with a hospital in the Southwest Missouri area. It thus appears that St. John's has evidence of an exclusive arrangement. Whether Cox is that hospital would not be relevant on that issue.

As to the pricing information and the market study, St. John's contends that they are "documents relating to the issue of whether costs really would be reduced if [Relator] is allowed to dishonor valid assignments," and that "St. John's is entitled to discover documents relating to the charge for health care in the area." The pricing information apparently only shows what health care costs currently are at hospitals which contract with Relator. The market study is an analysis of Relator's business approach to the health care industry, based on the cost at its member hospitals.

Neither document purports to contain information regarding health care charges by every health care provider in Southwest Missouri. The documents are limited to hospitals which contract with Relator. Thus, the documents are neither relevant to, nor calculated to lead to the discovery of relevant evidence on the issue of whether health care costs in Southwest Missouri are contained by non-assignment clauses. St. John's has not established that the requested documents are relevant, nor has it shown they are necessary to its trial preparation.

It also appears that the request might affect the privacy rights of non-parties. The pricing information contains health care costs agreed to by non-party health care providers as a result of private negotiations. As earlier noted in *Anheuser*, privacy rights of non-parties must be considered in weighing the need for requested documents. 692 S.W.2d at 328. *See also State ex rel. Wohl v. Sprague*, 711 S.W.2d 583, 585 (Mo.App.1986).

St. John's appears to provide health care service in the same geographical area as Cox Medical Center and perhaps other hospitals whose costs are the subject of the pricing information. In that regard, St. John's would appear to be in competition with those hospitals. It appears those hospitals have an interest in keeping their cost arrangements out of the hands of competitors. The risk of irreparable harm to Relator and the invasion of non-party privacy rights outweighs St. John's need for the requested documents.

*The preliminary order is made absolute.*

SHRUM, C.J., and MONTGOMERY, J., concur.