**STATE of Missouri ex rel. Rod WRIGHT and Unicom Group, Inc., Relators,**

v.

**Honorable Robert CAMPBELL, Respondent.**

No. 71388.

Missouri Court of Appeals, Eastern District, Writ Division Seven.

Feb. 11, 1997.

Julius H. Berg, James J. Wilson, St. Louis, for relators.

Charles Alan Seigel, Jay L. Levitch, St. Louis, for respondent.

1. The referendum was originally scheduled to be held in conjunction with the November 5, 1996 general election but was postponed for reasons unrelated to the underlying suit. *See State ex rel. Referendum Petitioners Committee Regarding Ordinance # 4639 v. Lasky*, 932 S.W.2d 392 (Mo. banc 1996).

2. Section 115.646 RSMo 1994 provides:

CRAHAN, Judge.

Relators Rod Wright and Unicom Group, Inc., seek a writ of prohibition to prevent Respondent from enforcing a subpoena duces tecum insofar as it would compel production of certain documents Relators claim were prepared for and are the property of an unrelated third party and are irrelevant to any issue in the underlying litigation. We order that our preliminary writ heretofore issued now be made permanent.

Relators are not a party to the suit which gave rise to the subpoena duces tecum. That lawsuit was instituted by Steak'n Shake, Inc. ("Plaintiff") against the City of Richmond Heights, Missouri ("City"). In its amended petition, Plaintiff alleges that it operates a restaurant situated in an area that the City, by ordinance, redesignated as a "conservation area" under §§ 99.800 *et seq.* RSMo 1994, the Real Property Tax Increment Allocation Redevelopment Act. In the ordinance, the City also approved a redevelopment plan and redevelopment project for the area and authorized City officials to enter into a redevelopment agreement with the John Buck Company.

Soon after the redevelopment ordinance was adopted, a Citizens Committee formed pursuant to the City Charter solicited sufficient signatures to compel a referendum on whether the ordinance should be repealed.[1] Plaintiff alleges that City is opposed to the repeal of the ordinance and has employed a public relations firm, Relator Unicom Group, Inc., to advise the City in its effort to oppose and defeat the repeal of the ordinance. Plaintiff claims that the payment of public funds to Unicom Group, Inc., and the expenditure of public funds to generate and distribute press releases, brochures, and other written and recorded materials to oppose and defeat the repeal of the ordinance violates § 115.646 RSMo 1994.[2] Plaintiff seeks a

**115.646. Public funds expenditure by political subdivision officers or employee, prohibited—personal appearances permitted**

No contribution or expenditure of public funds shall be made directly by any officer, employee or agent of any political subdivision to advocate, support, or oppose any ballot

declaration that such expenditures of public funds violate the statute and a preliminary and permanent injunction enjoining the City "from paying any public funds to the aforesaid public relations firm and from expending public funds to generate and distribute press releases, brochures and other written and recorded material for the purpose of opposing and defeating" repeal of the ordinance.

In the course of discovery in the underlying suit, Plaintiff deposed Mr. Carl Schwing, City Manager of the City of Richmond Heights concerning the City's employment of Unicom Group, Inc. Mr. Schwing testified that the City had employed Unicom to assist it in getting the facts out about the redevelopment proposal and to respond to misinformation about the plan put out by opposing groups. Mr. Schwing identified various brochures, fact sheets and press releases prepared by Unicom or the City with Unicom's assistance. All of these materials were conceded to have been prepared and distributed using public funds.

Mr. Schwing was also asked if the City, or Unicom at the City's direction, had set up any phone banks, or telephone solicitation efforts or had conducted any telephone or door to door surveys. Mr. Schwing replied that they had not done so to his knowledge and that Unicom had not been asked to do so by the City. Nor were such activities being contemplated by the City. Mr. Schwing was then asked if he knew whether Unicom or a company affiliated with Unicom was working with the developer, the John Buck Company. Mr. Schwing testified that he understood that the John Buck Company had hired Unicom to conduct a telephone survey, which had been completed. Mr. Schwing said that he had discussed the survey with two principals of Unicom, Relator Mr. Rod Wright and Mr. Jim Roberts. According to Mr. Schwing, information gathered in the survey led Mr. Wright and Mr. Roberts to conclude

that the City had not communicated enough information about the proposed redevelopment to residents and that the opposition's misleading messages were being believed. Based on this information, Unicom had recommended that more information needed to be provided to residents in a factual manner. Mr. Schwing indicated that the City intended to act on this recommendation and would likely issue additional materials paid for with public funds.

After deposing Mr. Schwing, Plaintiff then served Relator Mr. Wright, Research Director for Unicom, with the subpoena duces tecum that is the subject of this proceeding. Included among the items Mr. Wright was commanded to produce were the following:

\* \* \* \*

4. All questionnaires prepared by the UNICOM Group and/or any of its subsidiaries used or to be used in any surveys taken or to be taken of citizens of the City relating to the Ordinance, the subject matter of the Ordinance and/or any effort to repeal the Ordinance.

5. All documents reflecting any results of any survey taken by UNICOM Group or any of its subsidiaries relating to the Ordinance, the subject matter of the Ordinance and/or any effort to repeal the Ordinance.

Relators and the City each filed motions to quash. Relator's motion urged that the above-quoted paragraphs 4 and 5 sought to compel disclosure of trade secrets of Unicom, proprietary, confidential and highly sensitive information which Unicom had agreed with its client, the John Buck Company, to keep confidential, information paid for by the John Buck Company which Plaintiff was seeking to benefit from without cost, and information which was not relevant to any matter involved in the litigation.[3] The City's motion complained that the documents were wholly

---

measure or candidate for public office. This section shall not be construed to prohibit any public official of a political subdivision from making public appearances or from issuing press releases concerning any such ballot measure.

**3.** Respondent urges that Relators failed to support their motion with affidavits or other eviden-

tiary materials. Although we agree that Relators should have done so, we find that the facts pertinent to the issue presented are sufficiently established by Relators' petition for the writ of prohibition, Respondent's answer, the petition in the underlying suit and Mr. Schwing's deposition which was filed by Respondent and is part of the record before this court.

irrelevant to any claim in Plaintiff's lawsuit and that Plaintiff was seeking the documents to harass the City or obtain unfair use of proprietary information belonging to parties not involved in the suit. The City pointed out that the questionnaire and survey Plaintiff was seeking was not paid for with public funds and sought a protective order limiting the materials to be produced to documents relating to alleged expenditures of funds by the City. Respondent overruled the motions to quash and for a protective order and this proceeding followed.

■ Relators urge that Respondent abused his discretion in requiring them to provide Plaintiff with confidential and proprietary public opinion survey results that are neither relevant nor necessary to a determination of the issues in Plaintiff's suit against the City. Prohibition is the proper remedy when a trial court makes an order that constitutes an abuse of discretion in discovery proceedings. *State ex rel. Stecher v. Dowd,* 912 S.W.2d 462, 465 (Mo. banc 1995); *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 327 (Mo.App.1985). Although Relators are strangers to the proceeding at which the writ is aimed, they are nonetheless entitled to pursue the writ if the operation of the writ would affect their interests. *West County Care Center, Inc. v. Missouri Health Facilities Review Committee,* 773 S.W.2d 474, 477 (Mo.App.1989). That interest may be to person or property, economic or non-economic. *Id.* All that is required is a personal stake arising from a threatened or actual injury. *Id.* Here, Relators' allegation that revealing confidential information obtained for a private client would breach their contractual duties to that client provides a sufficient basis to give them standing to bring this proceeding.

■ The general rule of discovery is that parties may obtain information regarding any matter relevant to the subject matter involved in the pending action so long as the matter is not privileged. *Stecher,* 912 S.W.2d at 464; Rule 56.01(b)(1). The term "relevant" is broadly defined to include material "reasonably calculated to lead to the discovery of admissible evidence." However, as we observed in *Anheuser,*

> [I]n ruling upon objections to discovery requests, trial judges must consider not only questions of privilege, work product, relevance and tendency to lead to the discovery of admissible evidence, but they should also balance the need of the interrogator to obtain the information against the respondent's burden in furnishing it. Included in this burden may well be the extent of an invasion of privacy, particularly the privacy of a non-party.

692 S.W.2d at 328. (citations omitted). Further, a party seeking production of documents which contain trade secrets of confidential information must establish that the documents are relevant and that it has a specific need for the documents in order to prepare for trial. Rule 56.01(c)(7) [4]; *State ex rel. Blue Cross and Blue Shield of Missouri v. Anderson,* 897 S.W.2d 167, 169–71 (Mo. App.1995) (hereinafter *"Blue Cross "*).

Relators contend that the information sought is confidential research paid for by a third party who is on the opposite side of the referendum issue from Plaintiff. Disclosure of the survey results would effectively force the John Buck Company to finance its opponent's campaign by revealing to Plaintiff and others opposing redevelopment how effective their own efforts have been and where they need to concentrate their efforts. Respondent counters that *Blue Cross* is inapplicable because Relators have waived or forfeited any claim of confidentiality by sharing the survey results with the City and because Plaintiff is not a business competitor of the John Buck Company. We disagree.

■ Respondent's argument that Relators waived or forfeited their claim of confiden-

---

4. Rule 56.01(c)(7) provides:

    (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following;

    * * *

    (7) That a trade secret or other *confidential research,* development, or commercial information not be disclosed or be disclosed only in a designated way. (emphasis added).

tiality by sharing some or all of the results with the City ignores the fact that the City and the John Buck Company share a common interest. The John Buck Company is the developer authorized by a duly enacted City ordinance to undertake the proposed redevelopment project. Unless and until that ordinance is repealed in the contemplated referendum, the City and the John Buck Company have a common interest in seeing the project through to a successful conclusion. Further, the City and the John Buck Company have a common interest in assuring that the voter's decision in the referendum is based on correct, factual information, not misinformation. Disclosure of confidential information to parties who share a common interest does not necessarily destroy its confidentiality. Indeed, sharing the information with those aligned in interest may enhance its value. We find that the limited disclosure shown by the record in this case does not preclude Relators' claim that the information is "confidential research" subject to protection under Rule 56.01(c)(7).

Nor does the fact that Plaintiff Steak'n Shake and the John Buck Company are not direct business competitors undermine the rationale of *Blue Cross*. Plaintiff and the John Buck Company are clearly competitors in the battle over the referendum, the outcome of which may have substantial economic consequences for either side. Disclosure of the survey results would undoubtedly provide Plaintiff with a windfall in its campaign to persuade voters to repeal the ordinance. Under such circumstances, Plaintiff must properly shoulder the burden of establishing that the information sought is relevant to the issues to be decided in its lawsuit against the City and that it has a specific need for the documents in order to prepare for trial. *Blue Cross*, 897 S.W.2d at 170.

Although the merits of the underlying suit are not before us for decision, we must necessarily look to the petition to determine whether the survey may be relevant to a determination of any of the issues presented. The petition alleges, in rather broad terms, that the City is violating § 115.646 RSMo 1994 by expending public funds to oppose and defeat repeal of the ordinance. What is prohibited by the statute is the expenditure of public funds "to advocate, support, or oppose any ballot measure...." See n. 2, *supra*. Obviously, one can only "advocate," "support" or "oppose" through some sort of communication. Thus, whether the City is violating the statute must be determined by reference to the communications themselves. Either they "advocate," "support" or "oppose" the ballot measure or they do not. Dissemination of purely factual information which does not "advocate," "support" or "oppose" a ballot measure is not prohibited.

■ Given the narrow and straightforward nature of the issues presented, we can discern no basis for a finding either that the survey is relevant or that it could be of any conceivable assistance to Plaintiff in preparing for trial. At best, the survey might be relevant to a determination of whether any communications with residents are *necessary*, but the statute does not prohibit purely factual communications even if they are completely unnecessary. The necessity of the City's expenditure of public funds to communicate with its residents is simply not an issue to be decided in the underlying suit. The only issue is whether the communications for which the City has expended or will expend public funds "advocate," "support" or "oppose" the ballot measure. A survey of what City residents think or understand about the ballot measure cannot conceivably have any bearing on the issue presented, which must necessarily be determined from the language of the communications themselves. Indeed, had the City paid for the survey with public funds it would still be irrelevant to any issue in the underlying suit.

We order that our preliminary writ of prohibition heretofore issued now be made permanent. Respondent is directed to take no action to compel production of the information sought in paragraphs 4 and 5 of the attachment to the subpoena duces tecum.

HOFF, P.J., concurs.

CRANDALL, J., concurs in result and files separate opinion.

CRANDALL, Judge, concurring.

I concur in result. Rule 56.01 governs protective orders in the discovery process and is modeled after Federal Rule of Civil Procedure 26(c). *State ex rel. Blue Cross and Blue Shield of Missouri v. Anderson,* 897 S.W.2d 167, 170 (Mo.App.1995)(hereinafter *"Blue Cross"*); *Stortz v. Seier,* 835 S.W.2d 540, 541 (Mo.App.1992). Accordingly, federal precedent regarding the federal rule is persuasive authority for the construction of Rule 56.01(c). *Id.*

A party seeking protection under Federal Rule 26(c)(7) must show that the information sought is confidential and a specific potential harm could result from disclosure of the information. *In re Remington Arms Co.,* 952 F.2d 1029, 1032 (8th Cir.1991); *Centurion Indus. v. Warren Steurer and Associates,* 665 F.2d 323, 325 (10th Cir.1981); *Digital Equip. Corp. v. Micro Technology,* 142 F.R.D. 488, 491 (D.Colo.1992). The majority notes that Relators contend the information sought is confidential research paid for by a third party that is on the opposite side of the referendum issue from plaintiff. However, Relators' allegation that the information sought is confidential is not self-proving. In *Blue Cross,* the court used the following criteria, adopted generally by the federal courts, to determine whether information was confidential:

> (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to those involved in the business; (3) the extent of the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

*Blue Cross,* 897 S.W.2d at 170 (citations omitted).

In *Blue Cross,* the Relator sought to prevent discovery of certain pricing arrangements between the Relator and hospitals, studies of relative costs of health care and a provision of a contract. *Id.* at 169. In determining whether the information was confidential, the court looked to: the information not being available publicly, the hospitals' indication to the Relator that they did not want the agreements disclosed, the pricing information was available to employees on a need-to-know basis, the access to the market analysis was limited to three or four key management officials and a chief operating officer's statement that his copy of the study of relative health care was kept in a locked file. *Id.* at 170. The court concluded that the Relator had demonstrated the information was confidential. *Id.*

The record presented in this case does not establish the extent to which the information is known to those involved in the business or the extent of measures taken to guard the secrecy of the information. There is also nothing in the record demonstrating the extent to which the information is known outside the business other than Carl Schwing's statement in his deposition that he had discussed the survey with Rod Wright or Carl Roberts, two principals of Unicom. Relators allege plaintiff would benefit and use the information, but this allegation is insufficient by itself to establish the value to plaintiff. Relators have failed to demonstrate the information was confidential.

Relators also fail to demonstrate that good cause exists for the issuance of a protective order. A party seeking a protective order pursuant to Rule 56.01 must establish good cause. *Stortz,* 835 S.W.2d at 540 n. 3; *Brown v. McIbs,* 722 S.W.2d 337, 342–43 (Mo.App.1986). The trial court has discretion in determining whether good cause exists, but the court must have evidence presented before it can exercise discretion. Without evidence, it is impossible to ascertain whether good cause exists. *Id.*

Relators alleged in their motion that Unicom's business and future relationships with clients would be "irreparably damaged" if they were compelled to disclose confidential information obtained for the benefit of its clients. As discussed, Relators also alleged plaintiff is seeking to benefit and use information paid for by the John Buck Company. Although there may be cases where the allegations in a motion and other pleadings demonstrate, as a matter of law, that good cause exists, this is not present in this case. Relators' allegations are factual in nature and do not on their face demonstrate the required

good cause. Without supporting evidence, Relators' allegations are insufficient to demonstrate the trial court abused its discretion.[1]

I also disagree with the majority's analysis regarding disclosure of the information. The majority asserts that the City and the John Buck Company have a common interest in "seeing the project through to a successful conclusion" and "in assuring that the voter's decision in the referendum is based on correct, factual information, not misinformation."

The assumptions by the majority are questions of fact normally resolved after the presentation of evidence. There is nothing in the record that supports a finding that the John Buck Company wants to either inform or misinform the voters. Further, whether the City and the John Buck Company share a common interest is uncertain. It does appear that the City supports completion of the project. But when asked during his deposition whether he hoped the vote would be against repeal of the ordinance, Carl Schwing stated, "I hope that the residents make an informed decision and I'm sure the City Council and myself will be happy to abide by whatever decision the voters make on November 5th." The City's position could be one of neutrality and this is a question of fact best left to the trial court. Given the record presented here, the assumptions asserted by the majority are unwarranted.

Rule 56.01(b) provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Under the majority's analysis, the inquiry is to the communications themselves and not to any survey upon which the communications are based.

Section 115.646 prohibits a political subdivision from expending public funds to advocate, support or oppose any ballot measure. The distinction between a purely factual communication and one that advocates, supports or opposes a ballot measure could present a close question. A communication may emphasize certain facts and de-emphasize others, and ostensibly appear neutral. However, the communication may be subject to a different analysis after reviewing the information upon which the communication is based.

I do agree the writ should issue because the City has not issued any communication based on the survey. Until this occurs, the trial court in its discretion cannot determine whether the survey, paid for by a third party, is relevant. By its terms, § 115.646 does not prohibit a political subdivision from issuing press releases regarding a ballot measure. The communication may be such that any survey is not relevant.

Although not necessary to decide this appeal, the majority also states that even if the City had paid for the survey it would still be irrelevant to any issue in the underlying suit. It is conceivable that a survey could be conducted in such a suggestive manner that it would advocate, support or oppose a ballot measure or candidate for political office. There is nothing in the record to suggest that the survey taken in this case was suggestive. However, I disagree with majority's conclusion that the survey could never be relevant to any issue in the underlying suit. At the very least, this issue is best left to a case where there is a sufficient record and disposition of the issue is necessary to decide the appeal.

For the reasons discussed, I concur in result.

---

1. The party seeking a protective order under Federal Rule 26(c) must show good cause by demonstrating a particular need for protection. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). Broad allegations of harm that are not substantiated by specific examples or articulated reasoning fail the Rule 26(c) test. *Id.*